### In re WESTWOOD PLAZA APARTMENTS, LTD., Debtor.

### Bankruptcy No. 91–41536A.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Feb. 3, 1993.

---

Joyce W. Lindauer, Baskin & Novakov, P.C., Dallas, TX, for Westwood Plaza Apartments, Ltd.

## MEMORANDUM OPINION GRANTING EMERGENCY MOTION FOR STAY

C. HOUSTON ABEL, Chief Judge.

On September 24, 1992, the Court heard arguments on the emergency motion of United States Department of Housing and Urban Development ("HUD") to stay implementation of the Plan of Reorganization pending appeal of the order confirming Debtor's Plan of Reorganization. After due consideration of arguments of counsel and the pleadings on file, the Court is of the opinion that said motion be GRANTED.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and Bankruptcy Rule 8005. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### FINDINGS OF FACT

1. On September 9, 1991, Westwood Plaza Apartments, Ltd. ("Westwood") filed its bankruptcy petition.
2. On April 7, 1992, the Court entered its order confirming the Debtor's Plan of Reorganization.
3. On April 10, 1992, the Court *sua sponte* entered an Order Vacating Order of Confirmation.
4. On August 3, 1992, the Court entered the Confirmation Order and Memorandum Opinion on Confirmation of Debtor's Plan ("Plan") as Amended. 147 B.R. 692.
5. On August 6, 1992, HUD filed its Emergency Motion for Stay.

## CONCLUSIONS OF LAW

HUD claims it is entitled to a stay of this Court's judgments as a matter of right— i.e., without HUD having to post a supersedeas bond pursuant to Rule 62(d) & (e) of the Federal Rules of Civil Procedure (incorporated into Bankruptcy Rule 7062). HUD argues that a conjunctive reading of subdivisions (d) and (e) essentially gives the United States and its agencies a categorical right to a stay upon appeal without posting a bond.

■ Though this is not an adversary proceeding, Bankruptcy Rule 9014 makes Rule 7062 applicable in contested matters raised by a motion. Fed.R.Bankr.Proc. 9014. However, Rule 9014 permits a bankruptcy court to opt-out of Rule 7062 if it so directs. *In re Transleisure Corporation,* 41 B.R. 201, 203 (Bankr.E.D.N.Y.1984); *In re Summit Land Company,* 13 B.R. 310, 313 (Bankr.D. Utah 1981). Because the Court holds that both subdivision (e) and Rule 8005 provide the Court with discretionary power when determining whether to grant a stay upon appeal, the Court elects not to rely on (e). Instead, the Court elects to use Rule 8005[1] with its more flexible language authorizing a court to uniquely tailor relief to the circumstances of the case. *In re Gleasman,* 111 B.R. 595, 599 (Bankr.W.D.Tex.1990). Further, Rule 8005 provides a court with substantially broader discretion than that afforded by Rule 7062. *See In re Bleaufontaine, Inc.,* 634 F.2d 1383, 1390 n. 13 (5th Cir. Unit B 1981) (Rule 805, predecessor of Rule 8005, vest judges with the "widest possible discretion in deciding" whether to grant a stay); *In re Gleasman,* 111 B.R. at 600.

## I. STATUTORY LANGUAGE

■ Because the crux of HUD's argument is that HUD is entitled to a stay as a matter of right if subdivisions (d) and (e) are read together, the Court will first examine Rule 62 and its meaning. As has been stated by the Supreme Court, "the starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990); *quoting Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The language of Rule 62 demonstrates that subdivisions (d) and (e) should not be read together as HUD argues. To accept HUD's argument would render parts of subdivision (e) superfluous. *Connecticut National Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (courts should disfavor interpretations of statutes that render language superfluous). Rule 62 provides in pertinent parts:

**(d) Stay Upon Appeal.** When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.[2]

**(e) Stay in Favor of the United States or Agency Thereof.** When an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States and the operation or enforcement of the judgment is stayed, no

---

**1.** Bankruptcy Rule 8005 provides in pertinent part:

Notwithstanding Rule 7062 ... the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.... When an appeal is taken by the

United States or an officer or agency thereof or by direction of any department of the government of the United States a bond or other security shall not be required. Fed.R.Bankr.Proc. 8005.

**2.** None of the exceptions in subdivision (a) are applicable to this case.

bond, obligation, or other security shall be required from the appellant.

Fed.R.Civ.Proc. 62.

Subdivision (d) of Rule 62 entitles a party appealing a money judgment to a stay as a matter of right upon posting of a supersedeas bond. *See American Manufacturers Mutual Insurance Co. v. American Broadcasting–Paramount Theaters, Inc.,* 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966) (party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right upon posting of a bond in accordance with Federal Rule of Civil Procedure 62(d)); *Hebert v. Exxon Corp.,* 953 F.2d 936, 938 (5th Cir.1992). Subdivision (e) is written in such a way that the United States need not post a bond if two conditions are met. First, the appeal must be by the United States or an agency thereof. Second, a stay is granted by a court in favor of the United States. If these two condition precedents are met, then the United States shall not be required to post a bond.

Subdivision (e) is complete and not dependent on subdivision (d). The second condition of subdivision (e) is not worded as to provide an appeal as a matter of right as the first sentence to subdivision (d) does. It only states that a bond need not be posted if a stay is granted in favor of the United States. If subdivision (e) is read together with subdivision (d), the second condition of (e) becomes superfluous. The second condition would be repetitive of (d) because (d) would have already granted the United States the stay. For HUD to be correct that the United States has a matter of right to a stay without posting a bond, Congress would have drafted subdivision (e) without the second condition. Therefore, there would have been no superfluous second condition and subdivision (e) would have to be read with subdivision (d). Or, Congress would have included the United States' right to appeal without the need of posting a bond in one big general provision on stay pending appeal in subdivision (d). That way, there would have been no reason to create subdivision (e).

Whether subdivisions (d) and (e) of Rule 62 should be read together is an issue which appears to have been addressed in very few published cases. The Court notes that HUD's interpretation of Rule 62 has been accepted by other courts and by noted treatises on federal procedure. *See Hoban v. Washington Metropolitan Area Transit Authority,* 841 F.2d 1157, 1159 (D.C.Cir. 1988) (interpreting D.C. Superior Court Rule 62 which is identical to Federal Rule of Civil Procedure 62, except for the addition of the District of Columbia to Super.Ct.R. 62(e) and the omission of subdivision (f)); *In re Rape,* 100 B.R. 288 (Bankr. W.D.N.C.1989); 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 62.07, at 62–39 (2d ed. 1990) (hereinafter "Moore"); 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2905, at 326–277 (1973) (hereinafter "Wright and Miller"). However, HUD's interpretation is not universally accepted. *See C.H. Sanders Co., Inc. v. BHAP Housing Development Fund Co., Inc.,* 750 F.Supp. 67, 76 (E.D.N.Y.1990); *United States v. United States Fishing Vessel Maylin,* 130 F.R.D. 684, 686 (S.D.Fla.1990).

During arguments, HUD relied heavily on *In re Rape.* The bankruptcy court in *Rape* held that Farmers Home Administration was entitled as a matter of right to a stay without posting a bond pursuant to Rule 62. *Rape,* 100 B.R. at 288. However, the court conditioned this stay by permitting "the Debtors to make certain limited payments under the Chapter 12 Plan if the Government's appeal has not been determined" within 75 days. *Rape,* 100 B.R. at 288. The court in *Rape* concluded that the Government had a matter of right to a stay without providing any analysis. This Court declines to follow *Rape* or *Hoban* for the proposition that the United States has a right to a stay upon appeal.

Further, the Court is disturbed that leading treatises appear to support HUD's interpretation without any support for the theory. In their section on stay upon appeal, Professors Wright and Miller correctly state that a stay is issued "as a matter of right in cases within" Rule 62(d). Wright & Miller, ¶ 2905, at 326. Wright

and Miller then proceed in the very next sentence to state that "[n]o supersedeas bond is required on behalf of the United States", with a footnote citing to Rule 62(e). Wright & Miller, ¶ 2905, at 327. Because of the structure of the paragraph, it appears that Wright and Miller directly support HUD's interpretation. However, because Wright and Miller do not cite any authority for this interpretation, and do not provide any analysis supporting it, this Court declines to adopt their analysis. Wright and Miller appear to have given credence to the United States interpretation based upon a superficial reading of Rule 62. This is disturbing because the Court notes that Wright & Miller is a highly respected treatise which has been used on many occasions by this Court.

The Court is equally disturbed with the interpretation provided in Professor Moore's treatise. Moore states that " '[w]hen an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States', and a stay is authorized under other subdivisions of Rule 62, the United States is entitled to a stay without the necessity of giving bond, obligation or security." Moore's Federal Practice, ¶ 62.07, at 62–39. This broad statement implies that subdivision (e) should be read with all the other provisions of Rule 62. If this is true, then subdivisions (d) and (e) should be read together. Though the Court does not disagree that subdivision (e) may be read with other provisions of Rule 62, this opinion does not address that issue. However, the Court disagrees with the proposition that subdivisions (d) and (e) should be read together in a manner obligating any part of either.

■ The Court instead will follow *United States v. United States Fishing Vessel Maylin*, 130 F.R.D. 684 (S.D.Fla.1990), and *C.H. Sanders Co., Inc. v. BHAP Housing Development Fund Co., Inc.*, 750 F.Supp. 67 (E.D.N.Y.1990), which hold that the United States is not entitled to a stay as a matter of right under subdivision (e). The court in *C.H. Sanders Co.*, with HUD as a defendant, addressed the same issue we

face in this case. District Judge Glasser in his opinion analyzed the history of subdivisions (d) and (e) and many of the same authorities HUD relied upon in this case. Without rehashing a very thorough analysis, the Court adopts the holding of *C.H. Sanders Co.* as it relates to whether the United States has a matter of right to a stay upon appeal. As Judge Glasser stated:

[a] careful reading of the statutes, their historical antecedents and the commentator upon which the government relies would have plainly revealed that when the government files a notice of appeal it need not file a bond and that the notice *in and of itself,* does not operate as a stay.

*C.H. Sanders Co.*, 750 F.Supp. at 76 (emphasis added).

### This Court's Reading is Consistent with Obvious Congressional Intent

■ It is important to note that the Court's reading of subdivision (e) still provides the United States with a unique "benefit" that no other party may receive. The United States still has the right of not posting a bond when it is granted a stay upon appeal. This right, however, only matures after a court (in its discretion) has granted a stay. This interpretation of subdivisions (d) and (e) is consistent with obvious Congressional intent of only to relieve the United States from the requirement of posting a bond. The Court could find no language that Congress ever intended to give the United States a matter of right to a stay upon appeal as well.

### II. Avoid a Constitutional Question Whenever Possible

Cardinal rule of construction is that a court "should avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Peretz v. United States,* — U.S. —, —, 111 S.Ct. 2661, 2676, 115 L.Ed.2d 808 (1991). The Court's reading of (e) avoids a possible constitutional puzzle. HUD's interpretation of (e) would create a separa-

tion of powers problem between the legislative, executive and judicial branches. It would subject a court's decision to the dictate and control of the United States or its agencies by giving them a categorical per se right to a stay upon appeal. Another branch of the government would be able to manipulate the judiciary in an era when judicial resources are extremely scarce (i.e., by demanding an automatic stay during the pendency of an appeal even though the basis for appeal might be meritless or in bad faith).[3] The control over the judiciary by another branch of the government violates our political scheme. *Mistretta v. United States,* 488 U.S. 361, 380, 109 S.Ct. 647, 659, 102 L.Ed.2d 714 (1989) (the separation of governmental powers into three coordinate branches is essential to the preservation of liberty). The Constitution mandates that "each of the three general departments of government [must remain] entirely free from the control or coercive influence, direct or indirect, of either of the others." *Humphrey's Executor v. United States,* 295 U.S. 602, 629, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935). Accordingly, the Court holds that subdivisions (d) and (e) are not to be read together. Therefore, the Court will use its discretionary powers to determine whether HUD is entitled to a stay.

## III. APPLYING RULE 8005

Because subdivision (d) is not applicable, the granting of a stay becomes discretionary with the Court. The United States may be granted a stay upon appeal without posting a bond, but subject to the Court's discretion. That way, a debtor is not vulnerable to the unbridled and inequitable appeal power of the United States.

■ When determining whether to grant a stay under Rule 8005, many courts consider the standard for granting a preliminary injunction[4] as a guideline. *In re Wymer,* 5 B.R. 802, 806 (Bankr. 9th Cir. 1980); *In re Gleasman,* 111 B.R. at 599. The use of this standard, however, is to assist a court in the exercise of its discretion and not provide a rigid set of mandatory rules for a court to follow. *In re Dakota Rail, Inc.,* 111 B.R. 818, 820 (Bankr. D.Minn.1990) (factors are not an absolute prerequisite for a stay). This flexible use of the standard is consistent with the plain language of Rule 8005. *In re The Barrick Group, Inc.,* 99 B.R. 513, 515 (Bankr. D.Conn.1989).

■ Regarding the first factor, the Court disagrees with HUD that there is a likelihood that HUD will succeed on the merits. However, though the Court believes its decision is correct, there are important legal questions involved. At the forefront is the appropriate standard for determining the market rate of interest in a "cramdown" plan. The Fifth Circuit has yet to address this question and the circuits which have are split. Because of the importance of this question to the confirmation of the Plan, the balancing of the equities favor granting a stay. *See In re First South Savings Association,* 820 F.2d 700, 709 n. 10 (5th Cir.1987) (movant need only show a serious legal question is involved and "that the balance of the equities weighs heavily in favor of granting the stay"); *quoting Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. Unit A 1982).

---

**3.** Congressional concern for the rising costs of litigation is evident in the Introduction to the Civil Justice Expense and Delay Reduction Plan:

> In recent years, however, all three branches of government and the private sector have decried the fact that the civil legal system has become burdened with the excess costs and delays. Overuse and abuse of the system threaten the ability of the courts to provide equal justice for all.

United States District Court for the Eastern District of Texas Civil Justice Expense and Delay Reduction Plan, *adopted pursuant to* Civil Justice Reform Act, 28 U.S.C. § 471 (1990).

**4.** Standard for preliminary injunction is a showing of:

> (1) likelihood of success on the merits;
> (2) irreparable injury if the stay is not granted;
> (3) absence of substantial harm to the other parties from granting the stay; and
> (4) service to the public interest from granting the stay.

*Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1067 (5th Cir.1986).

Regarding the second factor, that being whether irreparable injury may occur if the stay is not granted, the Court agrees with HUD that consummation of the Plan may render any challenges to the confirmation moot. *See In re Crystal Oil Co.,* 854 F.2d 79, 81–82 (5th Cir.1988). Therefore, the Court believes this factor tilts in favor of HUD for the granting of a stay.

When considering the remaining two factors (any substantial harm to other parties and whether granting the stay would serve the public interest), the Court notes that Westwood stated it would not object to the granting of a stay if the stay was conditioned on the following:

1. Westwood's ability to pay administration and tax claims as provided for in the Plan;
2. Westwood's ability to pay HUD on its allowed secured claim as provided for in the Plan;
3. Any excess funds after payments permitted herein and after payment of reasonable and necessary expenses of operating the property shall be held in an interest-bearing account pending appeal;
4. HUD is not permitted to enforce its contractual rights under its loan documents during the time that a stay pending appeal is in place;
5. Debtor will provide ABC reports to HUD as previously ordered by this Court.

Westwood stated that these conditions would prevent it from being substantially harmed during the pendency of an appeal. Without these conditions, Westwood and the implementation of the Plan would have a difficult time surviving the appellate process. Therefore, the Court holds that these conditions will adequately protect Westwood during an appeal and that the public interest would be served if the stay is granted.

Accordingly, the Court holds that HUD should be granted a stay pending appeal without posting a supersedeas bond pursuant to Rule 8005—subject only to the above conditions. This holding is in line with the discretionary power under Rule 8005 which permits a court to condition a stay on terms which will protect the rights of all parties in interest. An order reflecting the findings and conclusions of the Court shall be entered concurrently with this memorandum opinion.

The Court's Memorandum Opinion signed October 12, 1992, is VACATED. This Memorandum Opinion is entered in its place to be effective October 12, 1992, *nunc pro tunc.*